| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR ACCOUNT FOR TELEPHONE NUMBERS 423-509-4678 (TT1), and 678-273-6158 (TT2) THAT ARE STORED AT PREMISES CONTROLLED BY VERIZON WIRELESS | Case No. 1:18-MJ- 18<br><br>**Filed Under Seal** |

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

This Affiant, Adam Baldwin, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, states the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I, Adam Baldwin, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since August 2014. In addition to my employment with ATF, I have over three years of law enforcement experience with the Pentagon Force Protection Agency (PFPA). During my tenure with PFPA, I served two years as a police officer in multiple capacities, to include patrol, surveillance detection, and as a law enforcement liaison to the Director of PFPA. I additionally served approximately one year as a special agent with PFPA, conducting complex criminal and protective intelligence investigations, as well as conducting domestic and international protective missions. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Uniformed Police Training Program (UPTP), Criminal Investigator Training Program (CITP), and the ATF Special Agent Basic Training (SABT) Program. I have received specialized training with

1

respect to narcotics and firearms violations and have been involved in numerous investigations involving violent crimes and the seizure of firearms and controlled substances. I also have a Bachelor of Science in Criminal Justice from East Tennessee State University, and a Master of Science in Criminal Justice from The University of Tennessee at Chattanooga.

2. This affidavit is submitted in support of an application for a search and seizure warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Cellco Partnership DBA Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey, 07921. The information to be searched is described herein and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), using the procedures described in Rule 41 of the Federal Rules of Criminal Procedure, to require Cellco Partnership DBA Verizon Wireless to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the account, including the contents of communications. The information contained in this affidavit has been obtained through observations by your Affiant, as well as from interviews with fellow law enforcement officers, and a Hamilton County Sheriff's Office (HCSO) Confidential Informant (CI). Not every fact known to your Affiant regarding the case has been included in the affidavit. Your Affiant has only included information and facts needed for the court to make a finding of probable cause.

3. Based upon your Affiant's training and experience and participation in investigations involving controlled substances, your Affiant knows that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and trafficking of controlled substances include, but are not limited to, drug paraphernalia, scales, and packaging materials suitable for particular substance(s); records and notes (including computer and electronically stored) of controlled substance transactions; money (proceeds of or capital for controlled substance(s) transactions); firearms kept for protection; stolen property (often traded for controlled substances); electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

4. It is also common for traffickers of these substances to use electronic communication devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. I know that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages which may lead to the identity of codefendants, coconspirators, and/or sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their

3

business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is evidence of such sales activity, demonstrates true ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones" all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

5. Based on training and experience in conducting investigations involving controlled substances, your Affiant also knows that drug dealers, while utilizing electronic communication devices to conduct their business, will often use "slang," or "code words" when referring to their business activities. These code words may include reference to, but are not limited to, money, narcotics, other co-conspirators, and certain locations. Drug dealers use these code words in an attempt to conceal their illegal activities from law enforcement in an effort to avoid detection. Your Affiant is also aware that specific slang and code words utilized by those trafficking in controlled substances may be influenced by various factors such as geographical area, cultural influences, and the type of controlled substance being trafficked.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 USC § 841(a)(1) and Title 26 USC § 846

4

have been committed by the possessors of telephone numbers 423-509-4678 (hereinafter TT1) and 678-273-6158 (hereinafter TT2). There is also probable cause to search the information described in Attachment A for evidence of these crimes as described in Attachment B.

## PROBABLE CAUSE

7. On or about February 15, 2018, your Affiant was notified by HCSO Narcotics Detective Posey that a HCSO CI had information pertaining to the distribution of suspected fentanyl pills stamped as 30mg Oxycodone tablets in the Chattanooga, TN area. According to Detective Posey, on February 14, 2018, the CI was found in possession of approximately eight small blue pills stamped with "M 30," which is consistent with 30mg Oxycodone tablets. Based on information obtained by your Affiant through an ongoing investigation in the Chattanooga area, your Affiant is aware that identical pills recently seized by law enforcement agencies in the Chattanooga, TN area have tested positive for fentanyl, instead of Oxycodone, and are not pharmaceutically manufactured. According to Detective Posey, the CI agreed to cooperate with law enforcement and provide information regarding the distribution of fentanyl pills in the Eastern District of Tennessee.

8. Your Affiant and Detective Posey subsequently met with the CI on February 15, 2018. During the meeting, the CI stated that his/her primary source for the small blue pills stamped as "M 30" is a black male known only to the CI as "Dee." According to the CI, he/she has been supplied "M 30" pills from "Dee for approximately 10 months at a rate of eight pills twice a week. According to the CI, he/she believed the pills to contain fentanyl and not be pharmaceutically manufactured due to their appearance and subsequent effect when ingested.

When asked how he/she was introduced to "Dee," the CI stated that a black male known only to the CI as "Tee" introduced him/her to "Dee" as a source for "Roxies" in the Chattanooga area. Your affiant knows, based on training and experience, that "Roxie" is "slang," or a code word typically used to refer to Oxycodone tablets, to include small blue pills stamped as "M 30."

9. The CI continued that when he/she wanted to order pills from "Dee," he/she would either text or call "Dee" on TT1. According to the CI, "Dee" last sold the CI pills on February 14, 2018, which the CI claimed were the same pills stamped as "M 30" recovered from the CI on the same day. The CI additionally provided TT2 as the telephone number for "Tee."

10. Following the meeting with the CI, your Affiant reviewed cell phone records for the CI's cellular telephone that were obtained by Detective Posey via a search warrant. The text messages reviewed on the CI's cellular device corroborated information provided by the CI regarding "Dee's" involvement in the distribution of pills. Specifically, numerous text messages were reviewed that contained language that your Affiant knows, based on training and experience, to be consistent with narcotics transactions. Examples of several of the text messages exchanged between "Dee" and the CI on TT1 are as follows:

11. On February 14, 2018, the following text messages were exchanged between the CI and "Dee" on TT1:

- CI: yo…

- CI: need 10

6

- TT1: Sup

- CI: need 10

- TT1: How many fr

- CI: 8

- CI: got 200

- CI: on me now

12. Based on training and experience, as well as information obtained from the CI, your affiant knows that individuals involved in the distribution of narcotics will frequently refer to specific amounts of narcotics simply by a number. According to the CI, he/she would frequently text "Dee" a number indicating the amount of pills, or "Roxies," that he/she wanted to purchase. In turn, based on the above text message exchange, your Affiant submits that the CI ordered eight pills, specifically pills stamped as 30mg Oxycodone tablets, from "Dee."

13. On February 12, 2018, the following text messages were exchanged between the CI and "Dee" on TT1:

- CI: yo I need some

- CI: title me up

- TT1: Yo

7

- CI: need 4

14. Based on training and experience, as well as information obtained from the CI, your affiant knows that individuals involved in the distribution of narcotics will frequently refer to specific amounts of narcotics as simply a number. According to the CI, he/she would frequently text "Dee" a number indicating the amount of pills that he/she wanted to purchase. In turn, based on the above text message exchange, your Affiant submits that the CI ordered four pills, specifically pills stamped as 30mg Oxycodone tablets, from "Dee."

15. In addition to the text messages exchanged between "Dee" and the CI, your Affiant additionally reviewed text messages exchanged between the CI and TT2, whom the CI provided as the contact number for "Tee." Examples of the text messages exchanges are as follows:

16. The following text messages were exchanged between the CI and TT2 on February 12, 2018:

- CI: got your 60 plus need 4 more

- TT2: Ok

17. Based on training and experience, as well as information obtained from the CI, your affiant knows that individuals involved in the distribution of narcotics will frequently refer to specific amounts of narcotics as simply a number. In addition, the above message exchange with "Tee" is consistent with text messages exchanged between the CI and "Dee" when the

CI ordered pills. In sum, your Affiant submits that the CI ordered four pills from "Tee" on TT2.

18. The following text messages were exchanged between the CI and TT2 on February 12, 2018:

- CI: 2r 1stick and ill owe you 80. I'll pay in full..

- TT2: Nah the best i can do is one and 1 and u gone have 2 come 2 that store and im fina pull up at it so take it or leave it

19. Based on training and experience, as well as information obtained from the CI, your affiant knows that individuals involved in the distribution of narcotics will frequently use "slang" or code words to refer to certain types of narcotics. Specifically, your Affiant knows that "r" is "slang", or "code," frequently used to refer to pills stamped as "M 30," or 30mg Oxycodone tablets. Your Affiant additionally knows that "stick" is slang, or code, for Xanax tablets. In sum, based on the above text message exchange, your Affiant submits that the CI ordered two "r's," or Oxycodone tablets, and one Xanax tablet from "Tee" on TT2.

## INFORMATION AND ITEM(S) TO BE SEARCHED AND SEIZED

20. Cellco Partnership DBA Verizon Wireless is a company that provides cellular telephone access to the general public, and that stores electronic communications, including retrieved and un-retrieved voicemail, text, and multimedia messages for Cellco Partnership DBA Verizon Wireless subscribers that may be located on the computers of Cellco Partnership DBA Verizon Wireless. Your Affiant is aware that computers located at Cellco Partnership

DBA Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

21. Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the messages, the message may remain in the system of Cellco Partnership DBA Verizon Wireless for weeks or months.

22. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. The service is often referred to as "Short Message Service" (SMS) or "multimedia Messaging Service" (MMS), and is often referred to generically as "text messaging" or "wireless messaging."

23. Based on your Affiant's knowledge and experience, your Affiant believes that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Cellco Partnership DBA Verizon Wireless for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

24. Wireless providers typically retain certain transactional information about the use of each telephone, voicemail, and text messaging account on their systems. This information can

10

include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or email addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods or connecting associated with every communication in which a particular cellular device was involved.

25. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

26. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number (ESN), a Mobile Electronic Identify Number 9MEIN), a Mobile Identification Number (MIN), a Subscriber Identity Module (SIM), an International Mobile Subscriber Identifier (IMSI), or an International Mobile Station Equipment Identify (IMEI). When a cellular device connects to a cellular antenna or tower, it

11

reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

27. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

28. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

29. Your Affiant is further aware that a "preservation letter," requesting the service provider preserve electronic communications over TT1. The letter was sent to the service provider on

12

February 16, 2018, which requested electronic information to be held. On February 20, 2018, Verizon Wireless also confirmed TT2 to be a Verizon Wireless telephone number. Your Affiant knows that based on the limitations of the service provider the stored electronic data can only be provided for dates that are determined by the service provider.

30. WHEREFORE, based upon the facts detailed in this affidavit, together with your Affiant's training and experience in drug trafficking investigations, your Affiant believes and submits there is probable cause to believe that evidence of drug trafficking, particularly of fentanyl and prescription medication in violation of Title 21, United States Code, Section 841 and Title 21, United States Code, Section 846, will be found in the records of Cellco Partnership DBA Verizon Wireless. More specifically, your Affiant believes text messages sent from and received by TT1 and TT2, as described above, and other stored electronic communications such as voicemails, incoming and outgoing telephone calls, and other records may constitute evidence of a planning phase and/or evidence of an ongoing conspiracy involving the distribution of controlled substances.

31. Further, based on knowledge, training, and experience, persons involved in criminal activity will use cellular phones, text messages, voicemails, and other forms of electronic communications to communicate with other persons involved in criminal activity, family members, or relatives, disclosing evidence of a crime that has occurred or will occur. Your Affiant further believes that any other communications by TT1 and TT2 in the days and hours immediately preceding the events described above in the form of stored text messages or other records in the possession of Cellco Partnership DBA Verizon Wireless with respect

to the cellular phones mentioned above will constitute evidence potentially probative of the subjects' activities and relationships immediately prior to and following the distribution of controlled substances.

32. These fruits, evidence and instrumentalities of crimes against the United States of America are described with particularity in Attachment B.

## CONCLUSION

28. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Further, this Court has jurisdiction under Fed.R.Crim.P. 41, as a "Magistrate Judge with authority in the District." Specifically, the United States District Court of the Eastern District of Tennessee is "a district court of the United States that has jurisdiction over the offense being investigated."

29. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

30. Based on the foregoing, I request that the Court issue the proposed search warrant.

## REQUEST FOR SEALING

31. Your affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents

14

Case 1:18-mj-00018-SKL   Document 4   Filed 03/20/18   Page 14 of 18   PageID #: 21

because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____
Adam Baldwin/ATF Special Agent

Sworn to and subscribed before me this 22 day of February 2018.

_____
Susan K. Lee
United States Magistrate Judge

15

# ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the cellular accounts for telephone numbers 423-509-4678 (TT1) and 678-273-6158 (TT2) that are stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider, headquartered at 180 Washington Valley Road, Bedminister, New Jersey 07921.

## ATTACHMENT B

### Property to Be Searched

This warrant applies to information associated with phone numbers 423-509-4678 (TT1), and 678-273-6158 (TT2), that are stored at premises owned, maintained, controlled, or operated by Cellco Partnership DBA Verizon Wireless, a wireless provider, headquartered at 180 Washington Valley Road, Bedminster, New Jersey, 07921.

### I. Information to be Disclosed by Cellco Partnership DBA Verizon Wireless

To the extent that the information described in "Property to Be Searched" is within the possession, custody, or control of Cellco Partnership DBA Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to Cellco Partnership DBA Verizon Wireless or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Cellco Partnership DBA Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in "Property to be Searched:"

a. All voicemail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier; *[initials]*

b. Cell tower location for TT1 and TT2 from ~~January 1~~ February 12, 2018 to February 21, 2018 *AB*

c. ~~All incoming and outgoing call detail for TT1 and TT2 from January 1, 2018 to February 21, 2018;~~ *AB [initials]*

d. Text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

e. All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full

names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security Number, date of birth, telephone numbers, and other identifiers associated with the account.

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. § 841(a)(1) involving TT1 and TT2 for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. The illegal sale and distribution of controlled substances;

b. Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

c. Evidence indicating the geographic location of the cellular device at times relevant to the investigation; and

d. The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).